BUENA VISTA LAND & DEVELOPMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2025.   Promulgated October 10, 1928.

*Shirley C. Ward, Esq.,* and *Chandler P. Ward, Esq.,* for the petitioner.

*LeRoy Hight, Esq.,* and *John D. Foley, Esq.,* for the respondent.

902

OPINION.

VAN FOSSAN: On June 28, 1921, petitioner, in consideration of the transfer to it by Honolulu Consolidated Oil Co. of 75,000 shares of its capital stock of a then fair market value of $375,000, relinquished to the State of California its "right, title and interest, if any," to certain oil-bearing lands located in that State. Petitioner's ultimate share in this sum was $180,000. The respondent taxed this entire sum as income. Petitioner contends that its "right, title and interest, if any," was worth at least as much on March 1, 1913, as at the date of relinquishment, and that accordingly, there was no gain.

The problem thus confronting us is the fair market value as of March 1, 1913, of whatever right, title and interest, if any, petitioner had on said date. We do not conceive it necessary in solving this

problem to determine the precise character and legal attributes of this interest. The claim or right that was relinquished in 1921 was not defined or described other than in the most general terms it was possible to employ. It was not then asserted unequivocally that the petitioner had any real right, title or interest. The words "if any" were used to obviate the necessity of such assertion. Nor do we deem it necessary to determine the motives that led the Honolulu Consolidated Oil Co. to pay $375,000 for the relinquishment of petitioner's claims. Whether this payment represented merely the nuisance value of the claims or evidenced a belief that they were acquiring some tangible interest is not considered germane to this decision. The evidence does not establish the actuating reasons and to speculate is idle. Whatever it was that was relinquished was deemed by the parties then to be worth $375,000. Was it worth the same, or more, or less on March 1, 1913?

On February 27, 1913 (two days before the basic valuation date), the Secretary of the Interior rendered a decision bearing directly on the rights of petitioner. In this decision the Secretary, after a full review of the petitioner's attempt to perfect the selections in question and the pertinent facts and court decisions, held:

The Department is accordingly of opinion that the school indemnity selections here involved are subject to rejection unless the lands covered thereby are specifically shown to be nonmineral in character.

The Buena Vista Company's contention that the Commissioner's letter of June 1, 1907, returning certain State indemnity school land lists "for allowance," constituted an approval of such selections is without merit. This contention is inconsistent with the present plea of the selectors for an immediate hearing with respect to these lands.

\* \* \* \* \* \* \*

In view of all the circumstances and by reason of the later executive withdrawals, the Department is of opinion that the orders for hearing issued in March, 1910, should not be revived or further pursued in regard to these proffered selections. Moreover, since the President has, on account of their mineral character, withdrawn these lands from disposition, it is evident that the Secretary has no authority to approve the selections and they must therefore be rejected. If the withdrawal shall be canceled the State may apply anew for the lands if it is so advised. However, counsel seem to admit that the lands are in fact mineral.

The State selections involved will be canceled. This is without prejudice to the right in the State to submit such showing as to nonmineral character of the lands involved as a fact, as may warrant further investigation to the end that the existing classification may be set aside and recommendation, based thereon, made to the President to relieve the lands from the existing withdrawal.

Such was the situation facing petitioner on March 1, 1913. The decision in *Wyoming and Ridgely* v. *United States*, 255 U. S. 489, rendered in 1921 could not then be anticipated. There was scant

basis for hope that the Secretary of the Interior, whose approval was necessary to perfect title to the selections, would reverse himself and reinstate the claims so disallowed. Indeed, on the basic date it would seem that petitioner's affairs were at extreme low tide. The chance of success, tested by all reasonable measures, had been reduced to a point where it appeared to be little if anything more than a gamble against very heavy odds.

This is not to say that in law petitioner's claims were any less valid than in 1921. But that is not the test of fair market value. Market value and intrinsic value may or may not coincide. Many of the factors that affect market value may have little relation to intrinsic value. In forming a judgment of the 1913 market value we must limit our consideration to those facts then known or reasonably to be predicted. Subsequent facts are useful as confirmatory of the reasonableness of judgments previously formed but should not be used in making an original determination.

Turning to 1921 we find a very different picture. The Supreme Court in the *Ridgely* case had held the Secretary to be in error; that the mineral or nonmineral character of the lands was to be determined as of the dates of the making of the selections, not the date of their approval; and that a State's rights are to be determined without regard to any subsequent withdrawals. Furthermore, the Secretary of the Interior had written a letter bowing to the mandate of the Supreme Court and offering, on condition of discontinuance by petitioner of a court action for injunction, to reinstate the selections and readjudicate the same in the light of the *Ridgely* case. On April 30, 1921, by order of the Secretary the selections were reinstated. Though petitioner complains that in order for hearing the Secretary laid down an impossible proposition, namely, that petitioner must show that at the time of the selections the lands were not known or believed to be mineral in character, we can not escape the conviction that petitioner's chances of success in perfection of its selections would have appealed much more strongly to the average man on this date than on March 1, 1913. Nor do we believe it a fair assumption that in meeting the test so laid down it would have been impossible to have obtained honest opinions and judgments of qualified experts, a point on which petitioner places great stress.

It was under these conditions that the sale in 1921 was made. Though petitioner contends that the price received was unfairly depressed by the " artificial test " imposed on petitioner by the Secretary, the record does not establish this contention as a fact and the sale for $375,000 furnishes us with our best measure of the fair market value in 1921. The strong logic of facts and surrounding circumstances demonstrates conclusively that the market value was

much less in 1913. The Secretary's decision of February 27, 1913, must inevitably have depressed the market value at that date, while the decision in the *Ridgely* case and the subsequent reinstatement of the claims, however circumscribed, must have stimulated interest and increased their attractiveness to possible purchasers in 1921.

For these and other reasons appearing in the testimony itself we can give little weight to the opinion of petitioner's witness, who placed a value of $450,000 on the claims as of March 1, 1913. This witness, failing to qualify as an expert, was permitted to express his opinion as an officer and stockholder of petitioner, but the facts and circumstances on the respective dates are so strongly to the contrary that they overcome any advantage that might accrue to petitioner from this expression of opinion. If $375,000 represented the market value of petitioner's right, title and interest, if any, in 1921, and we have no evidence to the contrary, then their market value in 1913 must have been much less.

This brings us to the crux of the matter. The record is insufficient to enable us to determine with any assurance of correctness the fair market value of petitioner's claims on March 1, 1913. The logic of fact and circumstance forbids us to adopt the value suggested by petitioner's witness. By the same process of reasoning we are convinced that the value in 1913 was much less than in 1921. The evidence is insufficient to indicate the amount of this lesser value. We can not speculate; our conclusion must be based on facts to be found in the record. Where the record fails to furnish the facts from which we can construct a judgment as to the value we have no alternative but to hold that petitioner has failed in proof of his case. He has not proved the respondent to be in error.

*Judgment will be entered under Rule 50.*